**Shirley MORAN, Appellant,**

v.

**CAREY LIMOUSINE, INC.,
et al., Appellees.**

No. 97–CV–2018.

District of Columbia Court of Appeals.

Argued Jan. 14, 1999.

Decided Sept. 2, 1999.

Howard B. Teller, Washington, DC, for appellant.

Francis T. Coleman, with whom Peter J. Petesch, Washington, DC, was on the brief, for appellees.

Before SCHWELB, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

This appeal arises from a trial court order granting the motion of appellees, Carey Limousine D.C., Inc. and Carey International, Inc., to stay litigation commenced by appellant, Shirley Moran, pending arbitration. On appeal, Moran argues that the trial court erred in ruling that the arbitration clause was binding and referring all of her claims to arbitration. Because the trial court's order is not final, we dismiss for lack of jurisdiction.

On June 30, 1994, Shirley Moran, Carey Limousine D.C., Inc. and its parent company, Carey International, Inc., (Carey) entered into an asset purchase agreement in which Moran sold her limousine business to Carey in exchange for twenty thousand dollars plus certain commissions and bonuses to be determined by a formula outlined in the written agreement. The agreement contained an arbitration clause which stated in pertinent part:

> Seller [Moran] shall have the right to review Purchaser's [Carey's] determination of the amount due or not due for any Anniversary Year by giving Purchaser written notice no later than thirty (30) days following receipt of the calculation statement for such Anniversary year. If the parties cannot resolve any differences, the matter shall be referred to a firm of certified public accountants to be mutually agreed upon (the "Accountants"), who shall resolve any differences. The decision of the Accountants shall be final and shall be binding on all parties.[1]

---

1. Moran also entered into an employment agreement with Carey which contained a similar arbitration clause giving her the right to review "the Employer's Bonus determination for any Contract Year" and request the appointment of an independent accountant to resolve any disputes.

On June 2, 1997, after numerous informal attempts to resolve the dispute over the amount of compensation she was owed by Carey, Moran formally requested an accounting from Carey, and proposed an independent accountant to arbitrate the dispute. Moran received no response to this request and, on August 15, 1997, she filed a complaint against both Carey Limousine, D.C., Inc. and Carey International, Inc. alleging breach of contract, fraud, gross negligence, tortious interference with a contractual relationship, and requesting an accounting. Carey responded by moving to dismiss or stay the litigation pending arbitration. On October 23, 1997, the trial court determined that the dispute was arbitrable and issued an order compelling arbitration covering all claims. Moran then filed a Rule 59(e) motion to reconsider or, in the alternative, to clarify the court's order, which the trial court denied. Moran filed a timely appeal from the court's denial of her motion to reconsider.

■ Moran contends that her claims are not arbitrable because there is no binding arbitration agreement due to the failure of a condition precedent, the parties' inability to decide on a mutually-agreeable accountant. In the alternative, Moran argues that her fraud and gross negligence claims are beyond the scope of the arbitration clause. These arguments are premature, however, because a trial court order staying litigation pending arbitration is not final and, therefore, is not appealable. *See Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 721 (D.C.1995) (citing D.C.Code § 11–721(a) (1995)); *Hercules & Co. v. Shama Restaurant Corp.,* 566 A.2d 31, 38 (D.C.1989); *see also Everett v. U.S. Airways Group, Inc.,* 328 U.S.App. D.C. 69, 71, 132 F.3d 770, 772 (D.C.Cir.1998); *Cofab, Inc. v. Philadelphia Joint Bd., Amalgamated Clothing & Textile Workers' Union,* 141 F.3d 105, 109 (3d Cir.1998); *McCarthy v. Providential Corp.,* 122 F.3d 1242, 1243–44 (9th Cir.1997). Therefore, as we do not have jurisdiction, we dismiss the appeal.[2]

■ In the alternative, Moran asserts that the arbitration agreement is "unworkable," citing Carey's initial refusal to arbitrate prior to the lawsuit and the absence of rules of implementation in the arbitration provision, and, thus, that it is likely that this dispute will remain unresolved by arbitration even after the trial court order. Therefore, she asserts, the arbitration order is the functional equivalent of a final order. While deadlock may be the practical reality facing the parties, the remedy for failure to arbitrate in the face of a trial court order compelling arbitration is not appeal to this court, but enforcement in the trial court of the arbitration agreement and the trial court's order.[3] Our dismissal

---

2. Appellees assert that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 (1998), mandated the trial court's order in this case. Although we consider federal court opinions interpreting the FAA as persuasive authority for similar provisions of the D.C. Uniform Arbitration Act, *see Hercules & Co. v. Beltway Carpet Serv., Inc.,* 592 A.2d 1069, 1072 (D.C.1991), the FAA applies to "courts of the United States," and, thus, not to this court. In any event, the FAA provision cited by appellees does not address the issue of whether and when the trial court's stay order is appealable. *Cf.* D.C.Code § 16–4317(a) (1997) (listing which orders related to arbitration are "final").

3. The asset purchase agreement stipulates that the agreement "shall be governed by and construed in accordance with the laws of the State of Delaware"; thus, in interpreting and enforcing the agreement this court is charged with applying Delaware law. *See Vaughan v. Nationwide Mut. Ins. Co.,* 702 A.2d 198, 200–01 (D.C.1997) (the law of the state chosen by the parties to govern their contractual rights controls) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).

Under Delaware law, a party aggrieved by the failure of another to arbitrate may petition the court to compel arbitration. *See* DEL. CODE ANN. tit. 10, § 5703(a) (1998); *see also* D.C.Code § 16–4302(a) (1997). Additionally, if the contractual method of appointing an arbitrator fails, a party may petition the court to appoint an arbitrator to resolve the dispute. *See* DEL. CODE ANN. tit. 10, § 5704; *see also* D.C.Code § 16–4303. Alternatively, Moran could seek contempt sanctions if Carey fails to

of her appeal for lack of jurisdiction does not preclude Moran from pursuing in the trial court any remedies that she may have.[4]

For the reasons stated above, this appeal is dismissed for lack of jurisdiction.[5]

*Appeal dismissed.*

comply with an arbitration order of the Superior Court. *See* D.C.Code § 11–944(a).

**4.** Therefore, there is no basis for Moran's claim, made for the first time in her reply brief, that unless the litigation stay is lifted on appeal, she will be denied due process as "she will be left with no redress whatsoever."

**5.** Moran also makes an estoppel argument, asserting that Carey has waived its right to request arbitration because of its initial delay in complying with the arbitration agreement. *See* Del. Code Ann. tit. 10, § 5703(a) ("A party aggrieved *by the failure of another to arbitrate* may file a complaint for an order compelling arbitration.") (emphasis added); *Pettinaro Constr. Co. v. Harry C. Partridge, Jr. & Sons, Inc.*, 408 A.2d 957 963–64 (Del.Ch.1979) (noting that because party requesting court intervention "has never demanded arbitration it is not a party 'aggrieved by the failure of another to arbitrate' and therefore cannot seek the aid of this court at this time."); *see also* 9 U.S.C. § 3 ("[T]he court ... shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default* in proceeding with such arbitration.") (emphasis added); D.C.Code § 16–4302(a) (providing that parties may seek order compelling arbitration upon showing of "opposing party's refusal to arbitrate"); *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964) (remanding for reconsideration of whether a stay should be granted given the defendant's past dilatory tactics and instructing the district court that if stay was granted, the order should expressly indicate that plaintiff may move to vacate the stay if arbitration has not concluded within a specific period of time). *But see Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir.1968) (mere delay not enough to sustain a claim of waiver, party must demonstrate prejudice). Here, Moran alleges both that Carey resisted her requests to arbitrate and that she was prejudiced in that she was forced to spend time and resources above and beyond what arbitration would have required. We note that the trial court did not address this issue in its original order or in its order denying Moran's motion for reconsideration or clarification of the court's order. As we have no jurisdiction over the appeal, however, we cannot consider Carey's entitlement to relief under the arbitration statute or Moran's estoppel argument.