William AVERY, Appellant,

v.

HPCS, INC., Appellee.

No. 00–CV–1315.

District of Columbia Court of Appeals.

Submitted Feb. 6, 2003.
Decided March 13, 2003.

Everald F. Thompson was on the brief for appellant.

Robert W. Mance was on the brief for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

After judicial resolution of an earlier civil action regarding the leasing of dental equipment involving the same parties as are presently before the court in the instant appeal, a motion for summary judgment was granted in the trial court in favor of appellee in response to a second complaint filed by appellant, asserting virtually the same causes of action as before, arising from the same dispute. We affirm.

## I.

### (A)

Appellant filed a civil action against appellee in August 1995 alleging defamation, intentional infliction of emotional distress, and violation of the District of Columbia Human Rights Act.[1] The case arose out of events surrounding appellee's attempts to collect an overdue balance regarding the lease of equipment from appellee. In response, appellee filed a counterclaim for the overdue balance. Following a trial, a jury returned a verdict on July 30, 1997 in favor of appellant for $8,000.00. On August 7, 1997 the court, however, entered judgment in favor of appellee in the amount of $7,834.94 on the counterclaim. Neither party appealed.

In January 1997, six months before the jury trial in the pending case, appellant attempted to refinance his house. Appellant learned at this time that his credit report reflected an unpaid debt to appellee. Appellant testified during trial that he owed a sum of money on the leased equipment and had not made the payments. The information regarding appellant's delinquency remained on his credit report until 1999, although the overdue balance was satisfied subsequent to the entry of the judgments in July and August.

On January 13, 1998, appellant filed a second complaint against appellee, again alleging defamation and intentional infliction of emotional distress. He also alleged harassment.[2] He asserts in the latter complaint that appellee was the cause of inaccurate entries in his credit report in January 1997, pending the earlier trial, resulting in financial injury to him at that time.

### (B)

In the main, the trial judge concluded that appellant's assertions in the present case were governed by the doctrine of "issue preclusion."[3] The judge noted:

... Plaintiff has testified under oath that, as of July, 1997, his debt to the defendant was unpaid. More importantly, the Court in the first litigation determined, after a full and fair opportunity to be heard, that the plaintiff owed the defendant $7,834.94. This finding was essential to a determination of defendant's counterclaim, it was embodied in a final judgment, and the issue was actually litigated. Thus, under the doctrine of issue preclusion, plaintiff is now barred from asserting in this litigation that he did not have an unpaid debt to the defendant at the time of the credit report.... [P]laintiff's claim for intentional infliction of emotional distress also must fail. To prove that claim, the

---

1. D.C.Code § 1–2501 (1981).

2. D.C.Code § 22–504(b) (1981).

3. *See Washington Medical Center v. Holle,* 573 A.2d 1269, 1283 (D.C.1990).

plaintiff must prove among other things that the defendant's conduct in making the information available for inclusion in the credit report was 'extreme and outrageous conduct.' *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 935 (D.C. 1995). If the information was true, as the Court held as matter of law it was, then defendant's conduct could not have been extreme and outrageous.... [F]or reasons discussed above, defendant's conduct in this case cannot as a matter of law be the predicate for a harassment claim.

Accordingly, the trial judge granted the motions for summary judgment as to all three claims, on the basis of issue preclusion, and this appeal followed.

## II.

■ Appellee's motion to the court presented familiar questions of summary judgment. Super. Ct. Civ. R. 56. In reviewing the grant of such a motion, it is settled that a reviewing court must view the record and asserted facts in a light most favorable to the non-moving party. *Sayan v. Riggs Nat'l Bank of Washington, D.C.*, 544 A.2d 267, 268 (D.C.1988). It is similarly true, under the rule, that the non-movant must counter material allegations of fact with sworn assertions of specific facts to avoid summary resolution. *Paul v. Howard Univ.*, 754 A.2d 297, 305 (D.C.2000). "Conclusory allegations are not enough to establish a genuine issue of material fact." *Id.*

■ In the instant case, appellant alleges in his second complaint that "derogatory information" caused him to pay a higher interest rate in order to refinance his residence in January 1997. There is no other allegation of this kind in his complaint. In response to a second motion for summary relief, appellant then asserted, in opposition to the motion, that the "derogatory

information" remained in his report even after the "disputed monies were paid." Noticeably missing from appellant's opposition are any sworn averments of facts relating to the failure to remove the satisfied debt from the report causing any subsequent specific resultant injuries.

■ Appellant's repetitive presentation of his second case is at center of the trial judge's ruling. The doctrine of claim preclusion or *res judicata* prevents a plaintiff "from relitigating the same claim or any claim that might have been raised in the first proceeding." *Washington Med. Ctr. v. Holle*, 573 A.2d 1269, 1281 (D.C. 1990). Issue preclusion

> renders conclusive in the same or subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties ...; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.

*Id.* at 1283.

Notwithstanding the sense of grievance which appellant expresses in this second action, we conclude the trial judge did not err in granting summary judgment because the critical facts surrounding the debt were actually litigated, determined and reduced to judgment after full opportunity to be heard. Appellant, without acknowledging the outcome of the first litigation, has created a revised theory of liability delving back to issues already decided. The amount of the lease arrearage is not now disputed, nor was it disputed at trial. That question has been adjudicated adversely against him. With regard to subsequent alleged injuries attributable to failure to remove the questioned credit report, appellant has not pled such a theory of liability in his complaint, nor has he

joined issue on a factual basis as to an alleged subsequent injury in opposing summary judgment. At bottom, appellant's pleadings are not only deficient as to allegations of fact, but premised on a theory of liability which evolved as the case progressed. Even under a theory of pleadings and practice which is less than strict, we cannot expect the judge or opposing counsel to remedy the deficiencies for appellant.

We conclude therefore that the trial judge did not err in ruling that summary judgment was warranted in this case. Accordingly, the judgment on appeal is hereby affirmed.

*So ordered.*

SCHWELB, Associate Judge, dissenting:

I regret that I am unable to agree with the majority's affirmance of the judgment. In my opinion, the effect of the trial court's decision is to treat the earlier lawsuit between the parties as dispositive of events that had not yet occurred at the time of the disposition of that suit. I must therefore respectfully dissent.

I agree with the court that insofar as Dr. Avery's second complaint can be construed as dealing only with the period prior to July 1997 (when Dr. Avery paid for the equipment), his action is barred by the doctrine of issue preclusion (collateral estoppel). I also agree that the second complaint is inartfully drawn and does not reveal that there has been a change of circumstances, namely, that the previous debt has been satisfied.

In his opposition to HPCS' motion for summary judgment, however, Dr. Avery alleged that

[f]urther, *after the judgment had been entered against Plaintiff in July 1997 and the disputed monies were paid,* Defendant HPCS continued to report adverse credit information and to improperly report such information and thereby continued to prejudice Plaintiff and his ability to obtain credit until November 1999 when Defendant HPCS had such derogatory and defamatory information removed from Plaintiff's credit report.

(Emphasis in original.) This allegation about events that occurred in the second half of 1997, in 1998, and in 1999, could not have been precluded by the prior action, because the first case was decided in July 1997. At that time, the alleged continuation of the defamatory reporting of Dr. Avery's credit from July 1997 to November 1999 had not yet happened. The court could not foresee in July 1997 that HPCS would fail for 2½ years to record on its books Dr. Avery's satisfaction of his debt. *A fortiori,* the court could not determine in advance the legal consequences of HPCS' alleged failure to reflect Dr. Avery's payment of what he had previously owed.

The majority's response to these realities is as follows:

With regard to subsequent alleged injuries attributable to failure to remove the questioned credit report, appellant has not pled such a theory of liability in his complaint, nor join[ed] issue on a factual basis as to subsequent injury in opposing summary judgment.

It is true that the complaint does not include the central allegation contained in his opposition, and that Dr. Avery has filed no affidavit or other admissible document showing that he suffered injury, after July 1997, as a result of the ensuing 2½ years of erroneous reflection of the status of Dr. Avery's former debt. As to the July 1997—November 1999 period, however, the defendant has not filed any contrary affidavit either, so the record is limited to the pleadings and Dr. Avery's opposition

to the motion for summary judgment. In my opinion, we should treat that opposition as an elaboration on Dr. Avery's complaint. Although Dr. Avery's counsel would have been well advised to include in his complaint the factual allegations contained in his opposition, our Rules of Civil Procedure, like the Federal Rules, "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome...." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It therefore seems to me that under these circumstances, we should not dispose, on the pleadings alone, of a factual allegation that Dr. Avery's credit was defamed for 2½ years after he satisfied his debt. If his credit was so defamed for so long a period, there is a substantial possibility that he suffered injury.

In the present context, and in the absence of affidavits or similar materials that go beyond the pleadings (at least as to the period in dispute), HPCS' motion for summary judgment is, for all practical purposes, equivalent to a motion for judgment on the pleadings, or to a motion to dismiss for failure to state a claim upon which relief may be granted. For purposes of such a motion, the plaintiff's allegations must be treated as true, *Vincent v. Anderson,* 621 A.2d 367, 372 (D.C.1993), and Dr. Avery is therefore entitled to present his case to a trier of fact. Accordingly, I would reverse the award of summary judgment in HPCS' favor and remand the case for trial.

Even if Dr. Avery's opposition to HPCS' motion of summary judgment is not treated as a *de facto* amendment of the complaint, it is evident from that opposition that Dr. Avery is now making an allegation regarding post-July 1997 events which is not subject to issue preclusion on the basis

of the earlier lawsuit. Under these circumstances, if the complaint is deemed inadequate because it lacks that allegation, the appropriate disposition is dismissal of the complaint without prejudice, or with leave to amend, rather than summary judgment on the merits. Such a disposition would enable Dr. Avery to submit relevant allegations to a fact-finder, so long as these allegations were timely made, and will avoid deciding the case on the basis of counsel's misstep in pleading.[1]

---

1. In that regard, I express no opinion as to whether a new or amended complaint would relate back, or as to whether Dr. Avery's new claim would be time-barred.